UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY LTD, *et al.*, § § § § | |
| Plaintiffs, § § | |
| VS. § § § | CIV. ACTION NO. 4:11-cv-00685 |
| GALLAGHER BENEFIT SERVICES, INC., *et al.*, § § § § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Before the Court is Third-Party Defendant, Kanawha Insurance Company's Partial Motion to Dismiss Certain Claims Alleged in Third-Party Plaintiff, Gallagher Benefit Services, Inc.'s First Amended Third-Party Complaint ("Motion"). (Doc. No. 34.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court determines that the Motion should be **GRANTED.**

### I.     BACKGROUND[1]

The facts in this case were discussed in the Court's prior Memorandum and Order granting Humana Inc.'s Motion to Dismiss All Claims Alleged in Third-Party Plaintiff, Gallagher Benefit Services, Inc.'s First Amended Third-Party Complaint. (Doc. No. 52.) The Court will recite those facts briefly here. North Cypress Medical Center Operating Company Ltd. and North Cypress Medical Center Operation Company GP, LLC (collectively, "North Cypress" or "Plaintiffs") own a full-service hospital in Houston, Texas. In 2009, North Cypress sought the assistance of Gallagher Benefit Services, Inc.

---
[1] All facts are taken from Gallagher's Amended Third-Party Complaint (Doc. No. 16) and Gallagher's Response to Kanawha's Motion to Dismiss (Doc. No. 42).

("Gallagher" or "Defendant") in acquiring an excess risk insurance policy. With Gallagher's guidance, North Cypress purchased the Kanawha Insurance Company Excess Risk Insurance Policy ("the Policy"), which was administered and issued by Humana Healthcare ("Humana").

The premium amounts under the Policy fluctuated from month to month. In order to submit accurate payments in spite of these variations, Gallagher, together with the company CoreSource, developed an underlying method and system for calculating the monthly premium amounts. Pursuant to an agreement between North Cypress and Gallagher, CoreSource was responsible for making the monthly calculations. CoreSource was also to communicate the amount due every month to North Cypress and then deliver North Cypress' payment to Humana. Payments were due on the first day of every month, but North Cypress was entitled to a 31 day window in which to submit late payments.

In April 2010, North Cypress received CoreSource's calculation for the premium 21 days late. North Cypress promptly issued a check to CoreSource. Although North Cypress sent CoreSource the check well within the grace period, Humana claimed that it did not receive payment until May 17, several weeks after the period had expired. Humana thereafter terminated the Policy.

Gallagher claims that it made multiple efforts to reinstate the Policy. Humana refused Gallagher's offers, however, insisting that it would reinstate the policy only if North Cypress would agree to zero percent coverage of its domestic claims or to substantial discounts on those claims. Rather than make these concessions, Gallagher procured a new insurance policy for North Cypress. The new policy began the day after the Humana policy terminated.

North Cypress filed this lawsuit against Gallagher in February 2011. Gallagher thereafter filed its First Amended Third-Party Complaint Against Third-Party Defendants Humana Inc. and Kanawha Insurance Company ("Third-Party Complaint"). (Doc. No. 16.) Gallagher argues that Humana and Kanawha Insurance Company ("Kanawha") (collectively, "Humana Defendants") are liable for breach of contract, breach of contract for violation of the covenant of good faith and fair dealing, breach of fiduciary duty, breach of the duty of good faith and fair dealing, breach of Texas Insurance Code §§ 541.051(5) and 541.061, fraud by nondisclosure of material facts, unjust enrichment, promissory estoppel, tortious interference with a prospective business relationship, tortious interference with an existing contract, implied indemnity, and punitive damages.

Specifically, Gallagher believes the Humana Defendants terminated the policy because they discovered that insuring the North Cypress risk would not be profitable. Accordingly, Gallagher argues, the Humana Defendants used the late payment as an excuse to avoid their coverage obligations. Gallagher observes that the Humana Defendants had accepted two prior late payments, and furthermore notes that submitting late claims is standard industry practice under this type of insurance. As Gallagher's liability is predicated entirely upon the Humana Defendants' improper cancelation of the Policy, Gallagher contends, they are liable to Gallagher for the full amount of any judgment against it. Gallagher also insists that the Humana Defendants are directly liable to Gallagher because their improper cancellation of North Cypress's excess risk policy led North Cypress to terminate its relationship with Gallagher.

Humana thereafter filed a Motion to Dismiss (Doc. No. 21), which the Court granted, giving Gallagher leave to amend its Third-Party Complaint within 14 days of the

date of the Memorandum and Order. (Doc. No. 52.) Gallagher chose not to amend its Third-Party Complaint. Therefore, Gallagher now proceeds only against Kanawha. Kanawha filed this Motion, seeking dismissal of Gallagher's claims under the joint business enterprise doctrine, for breach of contract, breach of contract for violation of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud by nondisclosure of material facts, unjust enrichment, promissory estoppel, tortious interference with a prospective business relationship, tortious interference with an existing contract, implied indemnity, and punitive damages. Kanawha does not seek dismissal of Gallagher's claims for breach of the duty of good faith and fair dealing and breaches of the Texas Insurance Code.

## II.     LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  A pleading need not contain

detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quotations and citations omitted).

### III. ANALYSIS

#### A. Breach of Contract, Breach of Contract for Violation of the Covenant of Good Faith and Fair Dealing, and Unjust Enrichment

Kanawha contends that Gallagher's contractually-based claims must be dismissed because the remedy of contribution is only available in tort actions. (Mot. Dismiss 12 (citing Tex. Civ. Prac. & Rem. Code § 32.001(a)).) In response, Gallagher insists that it is asserting its contract claims derivatively, and is not seeking contribution. (Resp. to Mot. Dismiss 18.) Citing to *Shaw SSS Fabricators, Inc. v. Reliant Energy Mid-Atlantic Power Holdings, LLC*, No. H-10-1612, 2010 WL 5444877 (S.D. Tex. Dec. 28, 2010), Gallagher argues that "Kanawha is derivatively liable for the full amount of any damages North Cypress may have suffered as a result of the improper termination of the Policy, without regard to the law of contribution." (*Id.* 19-20.)

*Shaw SSS Fabricators* is distinguishable from this case. In *Shaw SSS Fabricators*, the defendant sought to bring a third-party claim against a new third-party defendant,

5

asserting that the new third-party defendant had breached its contract with the defendant. *See* Third-Party Complaint of Defendants, *Shaw SSS Fabricators*, No. H-10-1612, 2010 WL 5444877 (S.D. Tex. Dec. 28, 2010), ECF No. 23. In this case, Gallagher seeks derivative liability based on contractual claims that North Cypress could have potentially brought against Kanawha. Therefore, *Shaw SSS Fabricators* is not of assistance to Gallagher.

Gallagher has not presented the Court with any other theory under which it could derivatively bring these contractually-based claims. "In diversity actions the law of the state in which the federal court is sitting governs the question whether a substantive right that can be the basis of a third-party claim exists." 6 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 1446 (3d ed. 2011). "'The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory.'" *Martco Ltd. Partnership v. Bruks Inc.*, 430 Fed.Appx. 332, 334 (5th Cir. 2011) (unpublished) (quoting 6 Wright, Miller, & Kane, Federal Practice & Procedure § 1446, at 415-21 (3d ed. 2010)). Gallagher has failed to establish any basis for its derivative third-party contract claims.

Further, as Kanawha noted, "[a] breach of contract claim is not a basis for contribution" under Texas law. *CBI NA-CON, Inc. v. UOP, Inc.*, 961 S.W.2d 336, 341 (Tex.App.-Hous. [1st Dist.] 1997). In other words, "a defendant can only seek contribution from a joint tort-feasor defendant that could be liable to the plaintiff in tort." *In re Today's Destiny, Inc.*, 388 B.R. 737, 756 (Bkrtcy. S.D. Tex. 2008) (citing *CBI NA-*

6

*CON*, 961 S.W.2d at 339). As such, Gallagher's claims for breach of contract and breach of contract for violation of the covenant of good faith and fair dealing must be dismissed. Additionally, the Court dismisses Gallagher's unjust enrichment claim, as it is a quasi-contract claim. *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000) ("Unjust enrichment claims are based in quasi-contract.").

### B. Fraud by Nondisclosure of Material Facts and Breach of Fiduciary Duty

According to Kanawha, Gallagher has not stated a claim of fraud by nondisclosure of material facts because Gallagher has not alleged the existence of a confidential or fiduciary relationship between Kanawha and North Cypress. (Mot. Dismiss 17.) Gallagher responds that, under Texas law, insurers are bound in a fiduciary relationship with their insureds by virtue of the unequal bargaining power between them. (Resp. to Mot. Dismiss 21.) Even if this were not the rule, Gallagher contends, Kanawha had a duty to disclose that it would suddenly begin enforcing the Policy's payment deadline because it had already accepted two late payments. (*Id.*)

To prevail on a fraud by nondisclosure claim, the plaintiff must prove that: (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose those facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge. *In re Baker*, No.10-10-00354-CV, 2011 WL 1679841, at *4 n.3 (Tex.App.-Waco May 4, 2011) (citing *Bright v.*

7

*Addison*, 171 S.W.3d 588, 599 (Tex.App.-Dallas 2005, pet. denied)). "Fraud by nondisclosure is simply a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts." *Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). As a "general rule a failure to disclose information does not constitute fraud unless there is a duty to disclose the information," and such a duty "arises only when there is a fiduciary or confidential relationship between the parties." *Vanderbilt Mortg. and Finance, Inc. v. Flores*, 735 F.Supp.2d 679, 695 (S.D. Tex. 2010). "Whether a duty to speak exists is a question of law." *Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, L.L.P.*, 344 S.W.3d 56, 60 (Tex.App.-Eastland 2011).

Insurers do not generally have a fiduciary duty toward their insureds. *Rice v. Metropolitan Life Ins. Co.*, 324 S.W.3d 660, 678 (Tex.App.-Fort Worth 2010, no pet.). Informal fiduciary relationships can arise from moral, social, domestic, or personal relationships of trust and confidence. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). Nonetheless, "[a] fiduciary duty is an extraordinary duty that is not lightly created." *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96 (Tex.App.-Houston [1st Dist.] 2003). "Proving the existence of a fiduciary relationship requires more than just evidence of prior dealings between the parties, and subjective trust by one party in another does not establish the requisite confidential relationship." *Id.* "To impose an informal fiduciary relationship in a business transaction, the requisite special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.*

The Policy alone did not create a fiduciary relationship; nor do the facts show that there was a special relationship of trust and confidence existing prior to, and apart from, the Policy. Although North Cypress may have trusted that Kanawha would continue to accept late payments, subjective trust is not sufficient to create a fiduciary duty. Gallagher does cite to cases where courts determined that repeated acceptance of late payments without complaint foreclosed the right to strictly enforce a contract. (Resp. to Mot. Dismiss 21.) Yet the plaintiffs in those cases were not asserting claims of fraud by nondisclosure of material fact, which requires the existence of a fiduciary or confidential relationship. As none existed here, Gallagher's fraud by nondisclosure claim fails. Similarly, Gallagher's claim for breach of fiduciary duty does not survive the Motion to Dismiss.

### C. *Promissory Estoppel*

Gallagher states that, "[i]n accepting North Cypress's late premium payments for most of the life of the Policy, the Humana Defendants made an implied promise to North Cypress that they would continue to accept late premium payments." (First Am. Compl. ¶ 139.) However, Kanawha insists that "accepting North Cypress' late premium payments during two of the three months the Policy was in place does not constitute a promise or 'implied promise' on which North Cypress could justifiably rely." (Mot. Dismiss 19.) Gallagher disagrees, stating that, "[i]n light of the fact that Kanawha accepted untimely payment of *every* premium payment without objection, coupled with the fact that it is common practice in the industry to accept late premium payments for this type of policy, the parties' course of dealing was sufficient to create an implied promise to accept future late payments." (Resp. to Mot. Dismiss 22.)

"Promissory estoppel may be utilized to enforce a promise when a plaintiff justifiably and reasonably relies on the promise to his detriment, it was foreseeable that the plaintiff would rely on the promise, and injustice can only be avoided by enforcement of the promise." *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 304 (Tex.App.-Dallas 2009). A promise is defined as "'[a] declaration which binds the person who makes it, either in honor, conscience, or law, to do or forbear a certain specific act, and which gives to the person to whom made a right to expect or claim the performance of some particular thing.'" *Traco, Inc. a Three Rivers Aluminum Co. v. Arrow Glass Co., Inc.*, 81 S.W.2d 186, 190 (Tex.App.-San Antonio 1991) (quoting Black's Law Dictionary 1092 (5th ed. 1979)). A "promise must be sufficiently definite" and "be more than speculation of future events, a statement of hope, an expression of opinion, an expectation, or an assumption." *Esty*, 298 S.W.3d at 305. The Court does not believe that acceptance of merely two late payments constitutes a promise under Texas law for the purposes of promissory estoppel. Therefore, Gallagher's promissory estoppel claim does not survive the Motion to Dismiss.

### D. Tortious Interference with Existing Contract

Kanawha claims that Gallagher fails to state a claim for tortious interference with an existing contract because it has failed to identify a contract subject to interference. (Mot. Dismiss 21.) Additionally, Kanawha states, Gallagher fails to allege proximate cause, as Gallagher makes no claim "that Kanawha was involved in persuading North Cypress to breach this alleged informal phantom contract with Gallagher." (*Id.*) Gallagher responds that it has met its burden by alleging that "Kanawha intended to interfere in Gallagher's contract because it intended to avoid commission payments on an

unprofitable risk, and it knew North Cypress would terminate that contract if Gallagher failed to procure insurance for it." (Resp. to Mot. Dismiss 24.)

To prevail on a claim for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) that proximately causes damage; and (4) actual damage or loss. *Specialties of Mexico Inc. v. Masterfoods USA*, No. L-09-88, 2010 WL 2488031, at *9 (S.D. Tex. June 14, 2010) (quoting *All Am. Tel., Inc. v. USLD Commc'ns., Inc.*, 291 S.W.3d 518, 531 (Tex.App.-Fort Worth 2009)). Gallagher's claim fails for two reasons. First, Gallagher fails to allege the existence of a contract. Indeed, Gallagher explains that it "had a valid contract with North Cypress to serve as North Cypress's insurance broker" only after it asserts that "[a]t the time the Humana Defendants terminated the Policy, Gallagher and North Cypress were engaged in a continuing business relationship" that "was not formalized in a written contract." (First Am. Compl. ¶¶ 157, 145.)

Second, Gallagher has not alleged facts sufficient to show proximate cause. "To establish proximate cause, a party must show that 'the defendant took an active part in persuading a party to a contract to breach it.'" *Amigo Broadcasting, LP v. Spanish Broadcasting System, Inc.*, 521 F.3d 472, 493 (5th Cir. 2008) (quoting *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex.App. 1992) (emphasis added)); *see also* Restatement (Second) of Torts § 766 cmt. n ("One does not induce another to commit a breach of contract with a third person under the rule stated in this Section [Section 766] when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person."). "'It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better

11

terms or other incentives, for tort liability to arise.'" *Hambric Sports Management, LLC v. Team AK, Inc.*, No. 3:09-CV-1662-L, 2010 WL 2605243, at *9 (N.D. Tex. June 29, 2010) (quoting *Davis*, 839 S.W.2d at 139). Gallagher has not pleaded that Kanawha interfered with the contract or persuaded North Cypress to breach it. For these reasons, Gallagher's claim for tortious interference with an existing contract fails.

### E. Tortious Interference with Prospective Business Relationship

According to Kanawha, Gallagher's claim for tortious interference with a prospective business relationship cannot survive the Motion to Dismiss because "Gallagher fails to plead any facts indicating that it would have maintained this alleged continuing relationship with [North Cypress] but for Kanawha's alleged independently tortious or unlawful interference." (Mot. Dismiss 20.) Furthermore, Kanawha alleges, Gallagher fails to plead facts establishing that Kanawha "did such independently tortious or unlawful acts 'with a conscious desire to prevent the relationship from occurring,' or that Kanawha 'knew the interference was certain or substantially certain to occur as a result of the conduct.'" (*Id.* 20-21 (quoting *M-I LLC v. Stelly*, 733 F.Supp.2d 759, 775 (S.D. Tex. 2010)).)

Gallagher responds that "interference in an existing business relationship that has not been formalized in a written contract is actionable under a tortious interference with prospective business relationship claim." (Resp. to Mot. Dismiss 22-23.) Further, Gallagher contends, the independent tort requirement merely requires that the plaintiff prove the defendant's conduct was actionable under a recognized tort, and Gallagher has alleged that Kanawha committed several torts: fraud by nondisclosure, tortious interference with existing contract, and tortious interference with prospective business

12

relationship. (*Id.* 23.) Finally, Gallagher insists that it has properly pleaded Kanawha's intent to interfere: the Third-Party Complaint states that Kanawha intended to avoid commission payments on what turned out to be an unprofitable risk. (*Id.*)

To state a claim for tortious interference with a prospective business relationship, a plaintiff must plead: (1) that there was a reasonable probability the plaintiff would have entered into a business relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or the defendant knew the interference was certain or substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *Specialties of Mexico Inc. v. Masterfoods USA*, No. L-09-88, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010). Gallagher is correct that "tortious interference with business or prospective contractual relations concerns not only business relations that have not yet been reduced to a contract but also continuing business relations not amounting to a formal contract." *Faucete v. Chantos*, 322 S.W.3d 901, 915 (Tex.App.-Houston [14 Dist.] 2010, no pet.). Yet, although Gallagher states, in its First Amended Third Party Complaint, that it has continuing business relations with North Cypress not amounting to a formal contract, it later repeatedly refers to a contract between it and North Cypress. (First. Am. Compl. ¶¶ 145, 59-62, 156.) Furthermore, as Gallagher's other tort claims have failed, Gallagher has not shown that Kanawha's "conduct would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). Therefore, Gallagher has failed to state a claim for tortious interference with a prospective business relationship.

### *F. Implied Indemnity*

Kanawha insists that Gallagher has no right to indemnification in this case. (Mot. Dismiss 13.) As Kanawha observes, the availability of common law indemnity in Texas has been limited, *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 833 (Tex.App.-Dallas 2011, no pet.), with "[t]he only remaining vestiges of common law indemnity [in Texas] involv[ing] purely vicarious liability," *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 360 (5th Cir. 2008) (quotations and footnote omitted). "'[C]ommon law indemnity is recoverable by a defendant who, through no act of his own, has been made to pay for the negligence of another defendant based solely upon the relationship between the two defendants,'" such as an agency or surety relationship. *Capitol One, N.A. v. Custom Lighting & Elec., Inc.*, No. H-09-3614, 2010 WL 4923470, at *5 (S.D. Tex. Nov. 29, 2010) (quoting *St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 177-78 (Tex.App.-Amarillo 1997, pet. denied)). Purely contractual relationships, however, generally do not suffice. *Id.* (citing *Astra Oil, Inc. v. Diamond Shamrock Refining Co., L.P.*, 89 S.W.3d 702, 706 (Tex.App.-Houston [1st Dist.] 2002)).

Gallagher offers no facts suggesting that Kanawha and Gallagher have a relationship that would give rise to a right of indemnification. In other words, Gallagher has not shown that it falls into any of the exceptions where indemnity applies: indemnity provided for in a contract, vicarious liability, or innocent product retailing. *Diamond Offshore Co. v. Survival Systems Intern., Inc.*, No. H-11-1701, 2012 WL 253381, at *3 (S.D. Tex. Jan. 26, 2012) (citing *Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179, 180 (Tex. 1998); *B & B Auto Supply, Sand Pit, & Trucking*

*Co. v. Cent. Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex. 1980)). Therefore, Gallagher is not entitled to indemnification.

### G. Punitive Damages

As the underlying claims for which Gallagher seeks punitive damages have been dismissed, Gallagher's claim for punitive damages must be stricken. Fed. R. Civ. P. 12(f)(1).

### H. Single Business Enterprise Theory

Kanawha asks that "Gallagher's single business enterprise theory of recovery … be dismissed with prejudice as a result of Gallagher's failure to state a claim upon which relief can be granted." (Mot. Dismiss 11.) Gallagher's single business theory is a theory of liability, not a claim to be dismissed. The single business enterprise theory was indeed rejected by the Texas Supreme Court in *SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444 (Tex. 2008), as discussed in this Court's prior Memorandum and Order. (Doc. No. 52.) This fact does not actually impact Gallagher's claims against Kanawha. According to the Third-Party Complaint, Kanawha issued the insurance policy and terminated the insurance policy. (First Am. Compl. ¶¶ 28, 53.) Therefore, Gallagher can bring its remaining claims directly against Kanawha. However, the Court strikes Gallagher's discussion of the single business enterprise theory as immaterial. Fed. R. Civ. P. 12(f)(1).

### IV. CONCLUSION

For the reasons explained above, Kanawha's Motion is **GRANTED.** Gallagher's claims for breach of contract, breach of contract for violation of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud by nondisclosure of material facts,

unjust enrichment, promissory estoppel, tortious interference with an existing contract, and implied indemnity are dismissed with prejudice. Gallagher's request for punitive damages and discussion of the single business enterprise doctrine are stricken. Gallagher's claim for tortious interference with a prospective business relationship is dismissed without prejudice. Gallagher may file an amended complaint within fourteen (14) days of the date of this Memorandum and Order for the purpose of curing the deficiencies in the interference with a prospective business relationship claim described above. If Gallagher files an amended complaint including a claim for tortious interference with a prospective business relationship, it may reinstate its request for punitive damages.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 9th day of February, 2012.

_[signature]_

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**