UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORTH CYPRESS MEDICAL | § | |
| CENTER OPERATING COMPANY | § | |
| LTD, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | CIV. ACTION NO. 4:11-cv-00685 |
| GALLAGHER BENEFIT SERVICES, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Before the Court is Third-Party Defendant Kanawha Insurance Company's Partial Motion to Dismiss Certain Claims Alleged in Third-Party Plaintiff, Gallagher Benefit Services, Inc.'s Second Amended Third-Party Complaint ("Motion"). (Doc. No. 74.) After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that the Motion should be **GRANTED** in part and **DENIED** in part.

**I. FACTS**

For the purposes of this Memorandum and Order only, the Court considers all well-pleaded facts in Defendant and Third-Party Plaintiff Gallagher Benefit Services, Inc.'s Second Amended Third-Party Complaint Against Third-Party Defendant Kanawha Insurance Company ("Third-Party Complaint") (Doc. No. 72) to be true. This litigation arises out of the improper cancelation of a group health excess risk insurance policy. (Third-Party Compl. ¶ 1.) First-Party Plaintiffs North Cypress Medical Center Operating Company Limited and North Cypress Operating Company GP, LLC (collectively, "North Cypress" or "First-Party Plaintiffs") own a general care hospital in Houston, Texas. (*Id.*) In July 2009, North Cypress engaged Defendant

and First-Party Plaintiff Gallagher Benefit Services, Inc. ("Gallagher" or "Third-Party Plaintiff") to serve as its broker for the procurement of group health excess risk insurance coverage; North Cypress did not memorialize the terms of its relationship with Gallagher in a written contract. (*Id.* ¶ 19.) With Gallagher's assistance, North Cypress purchased an excess risk insurance policy ("the Policy") from Humana, Inc. ("Humana"). (*Id.* ¶ 25.) North Cypress selected Defendant CoreSource ("CoreSource") to serve as its third-party administrator for the Policy. (*Id.* ¶ 23.)

Humana issued the Policy, entitled "Excess Risk Insurance Policy Non-Participating," to North Cypress through Third-Party Defendant Kanawha Insurance Company ("Kanawha" or "Third-Party Defendant"), one of Humana's subsidiaries. (*Id.* ¶ 28.) The Policy required North Cypress to make monthly premium payments. (*Id.* ¶ 2.) The premiums for excess risk insurance policies need to be recalculated each month because the policies cover a fluctuating number of employees. (*Id.* ¶ 3.) As such, it is common practice within the insurance industry for group health excess risk insurance carriers to accept late premium payments for their insureds. (*Id.*) Throughout the life of the Policy, North Cypress paid the premiums late, and Kanawha accepted those late payments without objection. (*Id.* ¶ 2.) Consistent with industry practice, Kanawha made statements to Gallagher indicating that it had no objections to North Cypress' late premium payments. (*Id.* ¶ 3.)

During the first few months of the Policy, North Cypress submitted claims to Kanawha that Kanawha considered excessive. (*Id.* ¶ 4.) Further, Kanawha knew North Cypress intended to submit additional large claims in the coming months. (*Id.*) North Cypress refused to discount its claims when Kanawha requested that it reduce its charges voluntarily. (*Id.*) As a consequence, Kanawha began looking for ways to avoid its obligations under the Policy. (*Id.* ¶ 5.) When, in keeping with the parties' prior course of performance, North Cypress made a late premium

payment, Kanawha terminated the Policy. (*Id.* ¶ 6.) Kanawha cited the late premium payment as the basis for the termination, notwithstanding that it had accepted late payments without objection every month up to that point. (*Id.*) Kanawha did not provide prior warning that it would no longer accept late premium payments. (*Id.*)

By virtue of North Cypress' broker of record letter, as well as the totality of the circumstances surrounding Gallagher's issuance of requests for proposals and the subsequent negotiations, Kanawha had actual knowledge that North Cypress had entered into a contractual arrangement with Gallagher.[1] (*Id.* ¶ 24.) Specifically, Kanawha was aware that Gallagher would serve as North Cypress' broker for the purpose of securing group health excess risk insurance coverage for the 2010 Policy year. (*Id.*) For the same reasons, Humana and Kanawha were aware that the business relationship between Gallagher and North Cypress would continue indefinitely into the future, with neither North Cypress nor Gallagher having any plans or intentions of terminating the relationship. (*Id.*)

Kanawha informed North Cypress that it would not reinstate the Policy unless North Cypress agreed to reduced coverage levels and discount rates. (*Id.* ¶ 7.) In response, North Cypress terminated its relationship with Gallagher and initiated this lawsuit. (*Id.* ¶ 8.) North Cypress alleges that Gallagher breached a variety of contractual, common law, and statutory duties by allowing North Cypress' Policy to terminate for nonpayment. (*Id.*) North Cypress seeks to recover from Gallagher an amount equal to the damages it allegedly suffered as a result of Kanawha's improper cancelation of its group health excess risk policy. (*Id.*)

Gallagher claims that Kanawha is derivatively liable because Gallagher's alleged liability is predicated upon Kanawha's improper cancellation of North Cypress' Policy. (*Id.* ¶ 9.)

---

[1] Gallagher's mention of a contractual relationship appears to be inconsistent with its statement, earlier in the Third-Party Complaint, that Gallagher had not entered into a contractual arrangement with North Cypress.

Additionally, Gallagher insists that Kanawha is directly liable because, by improperly canceling North Cypress' Policy, Kanawha caused North Cypress to terminate its relationship with Gallagher. (*Id.* ¶ 10.) As a consequence, Gallagher lost not only its existing contractual arrangement to serve as North Cypress' broker in 2010, but also its prospective brokerage relationship with North Cypress for 2011 and 2012. (*Id.*) Gallagher suffered lost prospective business, lost prospective profits, lost goodwill, and lost prospective business relationships. (*Id.*) Gallagher brings derivative claims for relief against Kanawha for breach of the duty of good faith and fair dealing and breaches of the Texas Insurance Code, and direct claims for relief for breaches of the Texas Insurance Code and for tortious interference with prospective business relations. (*Id.* ¶¶ 61-115.) This Court has supplemental jurisdiction over Gallagher's claims. (*Id.* ¶ 16.)

Kanawha filed a Partial Motion to Dismiss Certain Claims Alleged in Third-Party Plaintiff, Gallagher Benefit Services, Inc's First Amended Third-Party Complaint. (Doc. No. 34.) The Court granted Kanawha's Motion (Doc. No. 62), dismissing with prejudice Gallagher's claims for breach of contract, breach of contract for violation of the covenant of good faith and fair dealing, breach of fiduciary duty, fraud by nondisclosure of material facts, unjust enrichment, promissory estoppel, tortious interference with an existing contract, and implied indemnity. The Court dismissed Gallagher's claim for tortious interference with a prospective business relationship without prejudice, granting Gallagher leave to amend. After Gallagher filed its Second Amended Third-Party Complaint, Kanawha filed this Motion, seeking to dismiss certain claims against it. Specifically, Kanawha argues that Gallagher's claims for direct recovery under § 541.061 of the Texas Insurance Code and for tortious interference with a prospective business relationship must be dismissed. (Mot. Dismiss at 4-5.)

## II. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions."  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quotations and citations omitted).

## III. ANALYSIS

Gallagher's claims under §§ 541.061(2) and 541.061(3) of the Texas Insurance Code must be dismissed. However, Gallagher has succeeded in stating a claim under § 541.061(5) of the Texas Insurance Code because Gallagher has pleaded facts showing that Kanawha failed to disclose a matter required to be disclosed under the duty of good faith and fair dealing. Gallagher also succeeds in stating a claim for tortious interference with a prospective business relationship.

### A. Direct Claims Under Texas Insurance Code §§ 541.061(2), 541.061(3), and 541.061(5)

Kanawha argues that Gallagher fails to state any claims under § 541.061 of the Texas Insurance Code. (Mot. Dismiss at 10.) Gallagher brings claims under §§ 541.061(2), (3), and (5). Those sections provide:

> Sec. 541.061 MISREPRESENTATION OF INSURANCE POLICY. It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: …
>
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; …
>
> (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

Gallagher insists that its claims survive the Motion to Dismiss. Gallagher points to an April 9, 2010 email (the "April Email") from Kanawha that stated: "We have just received the February premium and I am pushing to get it paid on the next commission run which is 4/25[.] I will keep you posted. We have yet to receive the March premium to my knowledge can you please check the status. Premium is due on the 1st of the month with a 30 day grace period so April is due as

well while you are checking." (Doc. No. 78, Resp. to Mot. Dismiss at 2-3.) Gallagher claims that "[t]hese statements are misleading because they indicate Kanawha already had accepted late payment of the February 2010 premium without objection, and that it would accept late payment of future premiums, the deadline for one of which already had passed." (*Id.* at 5.) According to Gallagher, "[t]he misleading nature of those statements becomes even more pronounced when viewed in light of the circumstances in which they were made." (*Id.*) Gallagher contends that late premium payments for this type of insurance are common practice in the industry; furthermore, in keeping with this practice, Kanawha had accepted late premium payments from North Cypress throughout the life of the Policy. (*Id.*)

### i. §§ 541.061(2) and 541.061(3)

Gallagher has failed to state a claim for a violation of §§ 541.061(2) and 541.061(3). Even in light of Kanawha's acceptance of two prior late payments, the April Email did not "fail[] to state a material fact necessary to make other statements not misleading." Gallagher presses that § 541.061(2) "recognizes that a statement can be misleading in certain circumstances, even if the statement would be accurate when viewed in isolation." (*Id.* at 7.) Therefore, Gallagher urges this Court to conclude that Kanawha's failure to explain that it would enforce the Policy constitutes a violation of § 541.061(2). Although Kanawha did not mention in the April Email that it would begin enforcing the payment deadlines, its failure to do so did not make its other statements misleading. In fact, Kanawha emphasized that the payments were late and requested that North Cypress pay the amount owed.

Nor does Gallagher plead facts showing that Kanawha made "a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact," as required to state a claim under § 541.061(3). Indeed, Kanawha nowhere stated that it would

continue to accept late payments, and although Kanawha had accepted late payments throughout the Policy's life, that "life" only included two prior payments. No reasonably prudent person would conclude, from Kanawha's "manner" of "making a statement," that it would not enforce the payment deadline without notice. Kanawha's statements and conduct do not rise to the level of misrepresentation contemplated by § 541.061(2) and § 541.061(3).

### ii. § 541.061(5)

Gallagher succeeds in stating a claim under § 541.061(5), however. Gallagher contends that Kanawha was bound by a legal duty to provide advance notice that it would begin strict enforcement of the Policy's premium payment deadline. (*Id.* at 15-16.) According to Gallagher, Kanawha had a legal duty because of its duty of good faith and fair dealing and because it waived the right to insist on strict enforcement of the Policy's premium payment deadline without prior notice. Pointing the Court to *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278 (Tex. 1994), Gallagher insists that Kanawha's legal duty of good faith and fair dealing extends to the cancelation of insurance policies.

In *Shelton*, the Texas Supreme Court emphasized that "[a] cause of action is stated by alleging that the insurer had no reasonable basis for the cancellation of the policy and that the insurer knew or should have known of that fact." *Id.* at 283. Gallagher has pleaded that Kanawha accepted two prior late payments and that acceptance of late payments is common practice for the type of insurance at issue. Taken together, these facts—that Kanawha accepted late payments and that such acceptance was ordinary and, indeed, expected in the industry—state a claim that Kanawha had no reasonable basis for the cancelation of the Policy, and should have known that fact. Of course, discovery may uncover that acceptance of late payments is not par for the course in the industry, thus undercutting Gallagher's allegation that Kanawha had no reasonable basis

for the cancelation. At the dismissal stage, however, Gallagher has succeeded in stating a claim that Kanawha had no reasonable basis for the cancelation.

Likewise, Gallagher succeeds in pleading that Kanawha's actions caused Gallagher's damages.[2] Kanawha's actions were a cause-in-fact and a substantial factor in causing Gallagher's injury. *Nunn v. State Farm Mutual Auto. Ins. Co.*, 729 F.Supp.2d 801, 813-14 (N.D. Tex. 2010) (quoting *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 871 (N.D. Tex. 2008)). *See also Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007) ("Defining producing cause as being a substantial factor in bringing about an injury, and without which the injury would not have occurred, is easily understood and conveys the essential components of producing cause that (1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred."). Specifically, Gallagher contends that Kanawha's failure to disclose that it would enforce the Policy's payment deadlines caused North Cypress to make an unknowing late payment, resulting in the Policy's cancelation, which in turn caused North Cypress to terminate its relationship with Gallagher. Thus, Gallagher has pleaded facts demonstrating "'an unbroken causal connection between the alleged [actions] and [the] injuries suffered.'" *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 795 F.Supp.2d 493, 523-24 (N.D. Tex. 2011) (quoting *Travelers Indem. Co. v. Page & Assocs. Constr. Co.*, 2002 WL 1371065, at *9 (Tex.App. June 25, 2002, pet. denied)).

---

[2] The Court agrees with Gallagher that it need not show reliance. Reliance is required for claims brought pursuant to Texas Insurance Code § 541.151(2), which provides: "A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice: … specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment." Gallagher is bringing its action pursuant to § 541.151(1), which makes no mention of reliance. *See also Cal Dive Intern., Inc. v. Chartis Claims, Inc.*, No. 1:11–CV–347, 2011 WL 5372268, at *7 n.4 (E.D. Tex. Nov. 7, 2011) ("While causation is essential in order to recover damages, reliance does not appear to be explicitly required for [a § 541.151(1)] claim." (citing *Lubin v. Farmers Grp., Inc.*, No. 03-03-374, 2009 WL 3682602, at *21 (Tex.App.-Austin Nov. 6, 2009); *Lennar Corp. v. Great Am. Ins. Co.*, 200 S.W.3d 651, 700, 701 & n.70 (Tex.App.-Houston [14th Dist.] 2006, pet denied), *abrogated on other grounds by Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010))).

The requirements of Federal Rule of Civil Procedure 9(b), which governs fraud claims, apply "'to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.'" *Partain v. Mid-Continent Specialty Ins. Services, Inc.*, No. H–10–2580, 2012 WL 201864, at *5 (S.D. Tex. Jan. 20, 2012) (quoting *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742 (S.D. Tex. 1998)). Thus, "'claims alleging violations under the Texas Insurance Code that are substantively identical to fraud are subject to the Rule 9(b) pleading requirements.'" *Id.* (quoting *Carter v. Nationwide Property and Cas. Ins. Co.*, No. H-11-561, 2011 WL 2193385, at *1 (S.D. Tex. June 6, 2011)). "Under Texas law, the elements of fraud by misrepresentation are: '(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury.'" *Id.* (quoting *Rio Grande Royalty Co.. Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010)). As Gallagher's allegations under § 541.061(5) are substantively claims of fraud, Gallagher must meet 9(b)'s heightened pleading requirements. "'At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (quoting *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)). "'Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out.'" *Id.* (quoting *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)). Gallagher has pleaded that Kanawha accepted two late payments for the first two months of the Policy, and then terminated the Policy without providing prior notice that late payments would no longer be permitted. These facts contain the who, what, where, when, and how of Kanawha's

alleged wrongful actions, and thus meet Rule 9(b)'s demands. Therefore, Gallagher's §

541.061(5) claim survives Kanawha's Motion.

### B. Tortious Interference with Prospective Business Relationship

To state a claim for tortious interference with a prospective business relationship, a

plaintiff must plead: (1) that there was a reasonable probability the plaintiff would have entered

into a business relationship; (2) the defendant committed an independently tortious or unlawful

act that prevented the relationship from occurring; (3) the defendant did such act with a

conscious desire to prevent the relationship from occurring or the defendant knew the

interference was certain or substantially certain to occur as a result of the conduct; and (4) the

plaintiff suffered actual harm or damages as a result of the defendant's interference. *Specialties

of Mexico Inc. v. Masterfoods USA*, No. L-09-88, 2010 WL 2488031, at *10 (S.D. Tex. June 14,

2010). Kanawha asserts that Gallagher's claim for tortious interference with a prospective

business relationship fails for three reasons. (Mot. Dismiss at 19-20.) First, Kanawha argues,

Gallagher fails to adequately allege a reasonable probability that it would have entered into a

prospective business relationship with North Cypress. (*Id.* at 20.) Second, Kanawha insists that

Gallagher has failed to plead an independently tortious or unlawful act by Kanawha that

prevented the business relationship from occurring. (*Id.*) Third, Kanawha contends that

Gallagher has only provided conclusory allegations that Kanawha knew that the interference was

certain or substantially certain to occur. (*Id.*)

### i. Reasonable Probability that Kanawha and North Cypress Would Have Entered Into a Business Relationship

"To establish a claim for tortious interference, a plaintiff must prove that more than mere

negotiations occurred." *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475

(Tex.App.-Houston [1st Dist.] 2006, pet. denied) (citing *Milam v. Nat'l Ins. Crime Bureau*, 989

S.W.2d 126, 132 (Tex.App.-San Antonio 1999, no pet.); *Caller-Times Publ'g Co. v. Triad Commc'ns, Inc.*, 855 S.W.2d 18, 24 (Tex.App.-Corpus Christi 1993, no writ)). "Though it is not necessary to prove that the contract would have certainly been made but for the interference that result must have been reasonably probable, considering all of the facts and circumstances attendant to the transaction." *Id.* at 475-76 (citing *Hill v. Heritage Resources, Inc.*, 964 S.W.2d 89, 109 (Tex.App.-El Paso 1997)). Taken together, Gallagher's facts state a claim that more than mere negotiations had occurred; indeed, Gallagher and North Cypress already had a business relationship. Similarly, Gallagher's Third-Party Complaint includes facts showing that the prospective business relationship was reasonably probable. Gallagher's Third-Party Complaint specifies: "Prior to Kanawha's termination of the Policy in May 2010, Gallagher and North Cypress were engaged in a contractual arrangement. As a result of this relationship, there exists a reasonable probability that had Kanawha not terminated the Policy, North Cypress would have continued its business relationship with Gallagher in successive years, and entered into brokerage contracts with Gallagher for 2011 ands 2012 (if not longer)." (Third-Party Compl. ¶ 105.) To be sure, Gallagher's Third-Party Complaint does not offer extensive detail. Nonetheless, Gallagher emphasizes that future business relations were reasonably probable because Gallagher and North Cypress had a preexisting relationship and contract. Therefore, the Third-Party Complaint does more than merely conclusorily recite the elements of Gallagher's cause of action. Gallagher's facts are sufficient to state a claim that North Cypress and Gallagher would have entered into a business relationship.

### ii. Kanawha Committed an Independently Tortious or Unlawful Act

"[T]o recover for tortious interference with a prospective business relation[,] a plaintiff must prove that the defendant's conduct was independently tortious or wrongful." *Wal-Mart*

*Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). "Independently tortious" does "not mean that the plaintiff must be able to prove an independent tort." *Id.* Rather, a defendant's conduct is independently tortious if the plaintiff can "prove that the defendant's conduct would be actionable under a recognized tort." *Id.* "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." *Id.* As explained above, Gallagher has succeeded in stating a claim for breach of the duty of good faith and fair dealing. Likewise, Gallagher has stated a claim that Kanawha's actions violated Texas Insurance Code § 541.061(5). Thus, Gallagher has stated a claim that Kanawha's "conduct would be actionable under a recognized tort." *Id.*

### iii. Kanawha Knew the Interference Was Substantially Certain to Occur as a Result of its Conduct

Gallagher explains that "because [Kanawha] knew Gallagher was acting as North Cypress's broker, Kanawha also knew it would be substantially certain that North Cypress would terminate its relationship with Gallagher when it cancelled the Policy and thus eliminate the possibility that North Cypress would continue its relationship with Gallagher in 2011 and 2012, if not longer." (Third-Party Compl. ¶ 110.) The Court disagrees with Kanawha's conclusion that Gallagher's allegations as to the third element are conclusory. Kanawha allegedly knew it was substantially certain that North Cypress would terminate the relationship because Kanawha knew Gallagher was already acting as North Cypress' broker, and Kanawha was terminating the very agreement that Gallagher had brokered. These pleaded facts are sufficient to meet 12(b)(6)'s requirements. Thus, Gallagher's tortious interference with a prospective business relationship claim survives the Motion to Dismiss.

### IV. CONCLUSION

For the reasons explained above, Gallagher's Texas Insurance Code §§ 541.061(2) and 541.061(3) claims must be dismissed. Gallagher's § 541.061(5) claim and Gallagher's claim for interference with a prospective business relationship survive the Motion. As the Court has not granted Kanawha's Motion in full, Gallagher's request for punitive damages remains. Therefore, Kanawha's Motion (Doc. No. 74) is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 11th day of July, 2012.

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**

14